**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 22-CR-20083-KMW**

**UNITED STATES OF AMERICA**

**v.**

**DAVID SCHIEFERLE,**

　　　**Defendant.**

_____/

**UNITED STATES' MOTION TO LIMIT THE**
**TESTIMONY OF DEFENDANT'S EXPERT, RICHARD VASQUEZ**

The United States of America, by and through the undersigned Assistant United States

Attorneys, respectfully requests that the Court enter an order limiting the testimony of the Defendant's

expert witness, Richard Vasquez, because his testimony as to (1) what the ATF classified as silencers

prior to 2012 and (2) whether ATF classified other items such as "muzzle adapters," the "Tipton

Solvent Trap," and the "Cadiz oil filter holder" as "solvent traps and non-silencers" after 2012 is

irrelevant to the defendant's knowledge and intent to possess silencers when this offense was

committed in 2020 and will serve only to impermissibly confuse or mislead the jury.

**FACTUAL BACKGROUND**

On or about December 1 and December 14 2020, Customs and Border Protection ("CBP")

officers intercepted two packages from China containing a total of twelve (12) firearm silencers[1]

---

[1] Defense contends that these items are not silencers because 10 of the 12 devices contained in the
shipments were not drilled out in a manner that allowed them to be immediately used as silencers.
Therefore, under the statute, the United States would be required to prove that the defendant
possessed the items with the intent to convert them into usable silencer. *See* 18 U.S.C. § 921(a)(25).
The defense contends that these items were, instead, one of two different innocuous items: (1)
"solvent traps" (*See* DE 18 at 2) (Def. Mot. for Demand of Brady Evidence) (referring to items seized
from Defendant's home as solvent traps)) or (2) "fuel filters" (*See* DE 38 at 2) (Def. Mot. to Suppress
Evidence) ("[The items] are oil filters or inline filters and have a legal and legitimate use in farming
equipment and fuel filtering out the debris. . ."). *See also* DE 45 at 2 (Def. Reply to United States'

destined for the Defendant's home. Although ten of these silencers required modification to be used as such, two of them did not. The package declarations contained terms like "solvent" and "adapter," which are terms that are often used to mislead law enforcement and avoid detection of the packages. After the seizures, law enforcement identified at least eighteen (18) shipments from China since May 2020 that were addressed to the Defendant at his home. Two of these eighteen shipments were also declared as "Adapters."  Based on this information, law enforcement obtained a search warrant for the Defendant's residence and executed it on December 18, 2020.

During the search warrant execution, law enforcement seized one (1) additional firearm silencer[2] located inside a box labeled "solvent tube" and the Defendant's laptop computer located in a separate room. In addition to the seized items, law enforcement also observed approximately forty (40) firearms and firearm parts inside of the Defendant's home, which included firearm upper and lower receivers and one conversion kit,[3] demonstrating the Defendant's interest in modification of firearms. As part of the investigation, agents also obtained the Defendant's government issued iPhone assigned to him incident to his employment as a Federal Air Marshal.

HSI searched the contents of the Defendant's laptop and government iPhone, which yielded further evidence of his intent to use the devices as silencers.  For example, among other evidence, his laptop: (1) showed he viewed a YouTube video entitled "The Cheapest Suppressor;[4]" which shows an individual reviewing different brands of firearms silencers and comparing their price and qualities, (2) contained a manual called "The Poor Man's James Bond," which includes instructions on how to

---

Response to Mot. to Suppress) ("The parts, in this case, themselves ordered are legal and useable as a solvent trap or oil filter.")).

[2] This device requires some simple modification to become a functional silencer. The additional evidence described herein demonstrates that the Defendant intended to use the item as a silencer.

[3] The firearm conversion kit permitted shouldering the firearm and for the firearm to receive an extra magazine. Shouldering the firearm refers to an extension that allows the user to rest the firearm on his or her shoulder prior to firing.

[4] Suppressor is another term for a silencer.

create firearm silencers out of car parts; and (3) showed he performed an internet search for homemade guns and ammunition. This evidence demonstrates the Defendant's interest in firearm silencers and in modifying or creating guns and ammunition.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") subsequently submitted the thirteen (13) firearm silencers to the ATF Firearms and Technical Branch laboratory for analysis which confirmed each of the items had the features and characteristics of firearm silencers[5] and were, in fact, firearm silencers under Title 18 United States Code, Section 921(a)(25). The United States intends to call this expert as a witness at trial (DE 55).

## PROCEDURAL HISTORY

### Indictment

On March 8, 2020, a Grand Jury sitting in the Southern District of Florida returned a three count Indictment charging the Defendant with two counts of Illegal Importation of a Firearm, in violation of Title 18, United States Code, Section 922(l)—one relating to the December 1 shipment and one relating to the December 14 shipment—and one count of Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Section 5861(d) for the item marked "solvent tube" found in the Defendant's residence on December 18, 2020. (DE 3).

### Trial Date and Issues for the Jury

The case is currently set for trial during the two-week period beginning November 7, 2022. (DE 60).  The central issues for the jury to decide are whether the defendant knew that the devices were silencers and, for the devices that needed to be modified to function as silencers, whether he intended to do so.  *See* Proposed Jury Instructions (DE 53).

---

[5] These components include two ends caps attached to a hollow tube and an internal component such as baffles to dimmish the report (sound) of the muzzle blast.

<u>The Anticipated Testimony of Defense Expert, Richard Vasquez</u>

In preparation for trial, the Defendant made a demand for the government's expert witness summaries on September 27, 2022, pursuant to Fed. R. Crim. P. 16(a)(1)(G).  In response, the government filed its expert witness summaries on October 4, 2022. Fed. R. Crim. P. 16(a)(1)(G). (DE 55).[6]  The following day, the Defendant provided his reciprocal summary of expert testimony for firearms expert, Richard Vasquez, pursuant to Fed. R. Crim. P. 16(b)(1)(C). (DE 58). Mr. Vasquez's Affidavit is attached to the defense's expert summary and is also attached hereto as Exhibit 1.

The summary and affidavit seem to lay out three categories of information about which Mr. Vasquez is expected to testify: (1) Mr. Vasquez's qualifications (Exh. 1 at ¶¶ 1-6, 8), (2) his opinion about whether the items at issue here are silencers solvent traps, oil filters, or something else (Exh. 1 at ¶ 12-14, 17), and (3) the history of ATF's classifications of certain items as silencers (Exh. 1 at ¶¶ 7, 10-11, 15-16). The government seeks only to exclude this third category of information as irrelevant. The testimony the government seeks to exclude, which is drawn directly from Mr. Vasquez's affidavit, is described in more detail below:

(1) **Items ATF previously classified as silencers**, "such as solvent traps and muzzle attachment [sic] to hold bottle were no longer classified as silencers." (DE 58 at 2); *See also* Exh. 1 at ¶ 9.

(2) **That prior to 2012** "any devise [sic] with an expansion chamber attached to a firearm muzzle was classified as a silencer. (DE 58 at 2).  In addition, "attachments for soda bottles, such as the SWD pop bottle adaptor, were also classified as silencers." *See also* Exh. 1 at ¶ 10.

---

[6] The government initially provided the report of its firearms expert, James Barlow, in its First Response to the Standing Discovery Order on March 25, 2022. (DE 13).

(3) **In 2012**, the ATF Firearms and Technology Branch "reversed course and began classifying muzzle adapters with multiple uses designed to attach a silencer to a muzzle could be used as a flash suppressor attachment as no longer being classified as silencers." (DE 58 at 2-3). "Additionally, ATF approved the Tipton Solvent Trap and the Cadiz oil filter holder as a solvent trap and non-silencers. At this point, ATF did not overturn the longstanding opinion that the SWD pop bottle attachment was still a silencer. This leaves ATF with inconsistent opinions on the classification of silencers." Exh. 1 at ¶ 11.

(4) "ATF's inconsistent opinions on classifications of silencers." (DE 58 at 3). This appears to reference ¶ 12, 13, and 14 of Exhibit 1, which after a discussion comparing solvent traps to a Tipton solvent catcher and a Cadiz muzzle adapter, concludes that ATF's **prior alleged determinations** that "oil filters and solvent traps are not silencers is inconsistent." Exh. 1 at ¶ 14.

(5) Testimony that ATF erased "the consistency applied to the classification of silencers and approving [sic] solvent traps" and "**created the misunderstanding in the public** of what is a solvent trap" and created a cottage industry "where 'so called' solvent traps were manufactured or imported by people that did not have knowledge of [ATF Firearms and Technical Branch Opinion] and **have been misled** into believing these solvent traps are lawful to own." Exh. 1 at ¶ 15.

In short, the government seeks only to exclude Mr. Vasquez's testimony regarding any of ATFs alleged prior internal policies and internal classifications of items such as the SWD pop bottle adaptor, the Cadiz oil filter, and the Tipton solvent catcher, and to any alleged confusion these prior internal classifications or policies may have created (hereinafter "the proffered expert testimony"). As stated above, the issues in this case are (1) whether the defendant knew that the devices were silencers, and, for the devices that needed to be modified to function as silencers, (2) whether he intended to

do so. Any of Mr. Vasquez's expert testimony detailing ATF's prior internal policies or classifications

of pop bottle adaptors, oil filters, or solvent catchers and the like should be excluded because the

testimony has no bearing on what this Defendant knew or intended. By extension, any testimony Mr.

Vasquez will offer about the purported public confusion generated by these policies are similarly

irrelevant and will only serve to impermissibly confuse or mislead the jury.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 controls the admission of expert testimony and states as follows:

> If scientific, technical, or other specialized knowledge **will assist the trier of fact to understand the evidence or to determine a fact in issue**, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added). Before admitting expert testimony, though, the Court must

perform the critical "gatekeeping" function concerning the admissibility of expert testimony. *United*

*States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (internal citations omitted). The objective of said

gatekeeping requirement is to "ensure the reliability and relevancy of expert testimony." *Id.* at 1260.

Trial courts in the Eleventh Circuit must conduct a three-part inquiry when assessing the

admissibility of expert testimony. Courts must consider:

> (1) [whether] the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions [and whether it] is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) [whether] the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or **to determine a fact in issue.**

*Id.* (citing *City of Tuscaloosa v. Harcos Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (emphasis added);

*see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (". . .the Rules of Evidence—

especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both

rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on

scientifically valid principles will satisfy those demands."). The party seeking to admit the expert

testimony bears the burden of showing that their proposed expert meets these requirements. *See McCorvey v. Baxter Healthcare Corp.*, 298 F. 3d 1253, 1258 (11th Cir. 2002).[7]

Expert testimony is considered to assist the trier of fact if it concerns matters that are beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1263 (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen")). Further, expert testimony that otherwise meets the admissibility requirements may still be excluded under Rule 403 if the probative value of the otherwise admissible evidence is "substantially outweighed by its potential to confuse or mislead the jury." *Id.* (internal citations omitted).

The Supreme Court has acknowledged that expert testimony is powerful and has a higher tendency to mislead the jury than lay witness testimony. *See Daubert*, 509 U.S. at 595; *see also Frazier*, 387 F.3d at 1263 ("Simply put, expert testimony may be assigned a talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse [the jury]."). Admitting the defense's proffered expert testimony would have precisely that effect. The Court should exclude the defense's proffered expert testimony because (1) it will not assist the jury in determining any of the facts in issue (2) it will only confuse and mislead them.

---

[7] For purposes of this analysis, the United States acknowledges that the defense's proffered expert is both qualified to testify competently about the matters he intends to address and that his methodology and conclusions are sufficiently reliable. The government contends, though, that the defense expert's proffered testimony will not assist the jury to determine a fact in issue and will, in fact, only confuse the jury and muddle the issues that they must decide.

## ARGUMENT

**A.** **Mr. Vasquez's Testimony Will Not Assist the Jury Because It Does Not Bear on the Defendant's Knowledge or Intent.**

The defense expert's testimony will not assist the jury in determining a fact at issue because (1) his testimony addresses ATF's previous classifications of silencers more than five years before the offense conduct in this case, and (2) there is no evidence that the defendant was aware of any of ATF's previous classifications of silencers such that it would have impacted the defendant's knowledge or intent here.

"Expert testimony not relevant to any issue in the case and which would not assist the jury ha[s] to be excluded." *Rouco*, 765 F.2d at 995 (citing *United States v. Sorrentino*, 726 F.2d 876, 885 (1st Cir. 1984) (finding that expert testimony about the value of antiques was irrelevant where expert never appraised the antiques at issue because, although expert was "technically qualified," his expertise could not "assist the trier of fact to understand the evidence or to determine a fact in issue.")).

In *Ruoco*, after a defendant conducted several controlled purchases of firearms, silencers, and other weapons and attempted to negotiate the sale of four kilos of cocaine from an undercover agent, ATF formed a plan to arrest him. *Id.* at 985-87. The plan, however, went awry when the defendant became suspicious and tried to leave. *Id.* at 987. Subsequently, a gun battle ensued during which the defendant shot the undercover agent in the forehead. *Id.* The defendant was then arrested and indicted for, among other things, first degree murder. *Id.* At trial, the defendant claimed he was acting in self-defense, believing that the undercover agent was part of the Mafia who was trying to kill him. *Id.* After he was convicted, the defendant filed an appeal, arguing, in part, that the district court erred in failing to permit him to introduce expert testimony that, during the investigation, the undercover agent did not follow the appropriate standards of police conduct and increased the risk that the defendant would believe that the undercover agent would harm him. *Id.* at 995.

The Eleventh Circuit affirmed the district court's ruling, which excluded the expert testimony for the following reasons: (1) the testimony regarding the professional standard for an undercover arrest was irrelevant to the defendant's subjective intent while the undercover agent was attempting to arrest him because he did not know of the professional standard at the time; (2) the expert's opinion that the defendant may have been confused about the agent's identity, or that the average citizen may have expected the agent to act differently in attempting to arrest the defendant, was "valueless" because the expert "could offer nothing beyond the understanding and experience of the average citizen;" and (3) pursuant to Federal Rule of Evidence 403, the testimony was inadmissible because it would leave the jury with the misimpression that the defendant's criminal responsibility was contingent on the agent's conformity with the standard operating procedure. *Id.* at 995-96.  In essence, the expert testimony was excluded because it could not help the jury determine whether the defendant intended to kill the agent in attempt to escape an arrest.

The same reasoning applies here.  The proffered expert testimony discussing which items were previously classified as silencers is irrelevant because it has no bearing on whether the Defendant intended to use and/or convert the so-called solvent traps that he purchased as silencers.  To begin, with respect to the two so-called solvent traps that federal agents seized, which were ready to be used as silencers without any modification, the Defendant has not proffered any evidence to establish that he was aware of and read an ATF bulletin or notice that stated the specific items he purchased from China in December of 2020 did not qualify as silencers.  In fact, the government is unaware of any ATF statement that a so-called solvent trap consisting of a hollow tube, end caps, and internal baffles with a hole drilled through the center so that a bullet could pass through would not constitute a silencer.  So, even if at the time of the December shipments the Defendant had been aware of the *other* items like the Cadiz oil filters or muzzle adapters that Mr. Vazquez states ATF opined should no

longer be deemed as silencers, the reclassification of these different products have no bearing on whether the items that the Defendant ordered were classified as silencers.

With respect to the so-called solvent traps that required modification, the defense's proffered expert testimony has no bearing on the issue of whether the Defendant intended to convert them into silencers. The government's theory of the case is that, although the Defense argues the so-called solvent traps may be legal standing alone, when coupled with the Defendant's intent to "use them in assembling or fabricating a firearm silencer," the items are contraband. 18 U.S.C. § 921(a)(25). This theory is supported by the fact that the so-called solvent traps had pre-marked "dimples" or indentations directing a person to the specific place to drill to turn the item into a silencer, as well as the defendant's internet activity regarding silencers, such as "The Cheapest Suppressor" YouTube video, "The Poor Man's James Bond" book, and the internet searches for homemade guns. ATF bulletins or other materials cannot speak to whether the Defendant intended to convert the so-called solvent traps into silencers; and since the testimony cannot be used to assist the jury to determine a fact in issue, it should be excluded.

Second, the defense's expert testimony regarding public confusion of what constitutes a silencer is similarly irrelevant. Although Mr. Vasquez opines that "[a] cottage industry was created where 'so called' solvent traps were manufactured or imported by people that did not have knowledge of FTB opinions and have been misled into believing these solvent traps are lawful to own" (Exh. 1 at 3), this opinion has absolutely no bearing on the Defendant's mental state at the time of the offense. Just as ATF's standard arrest procedures were "valueless" to the issue of whether the defendant intended to kill the undercover agent in *Rouco*, Mr. Vazquez's pontification that some person somewhere may have been confused about ATF's classification of certain items as silencers cannot speak to whether the Defendant intended to convert the so-called solvent traps into silencers after he purchased them.

Even if the Court finds that the proffered expert testimony is relevant, it is still inadmissible under Rule 403. The defense's proffered expert testimony would leave the jury with the misimpression that the Defendant's criminal responsibility is somehow contingent on the general understanding or misunderstanding about what constitutes a silencer when, in fact, the only issue is whether *he* knew the nature of the items he possessed and imported and whether *he* intended to use them as such.

Because expert testimony has a "talismanic significance" in the eyes of lay jurors, *Frazier* 387 F.3d at 1263, the potential for undue prejudice should this testimony be admitted is significant. While the government acknowledges that the Rule 403 balancing test is an "extraordinary remedy" to be used "sparingly," *United States v. Lopez,* 649 F.3d 1222, 1247 (11th Cir. 2011), here, the testimony is does not bear on the issues the jury must decide. The testimony has no probative value, and, as discussed above, the potential for undue prejudice is much higher when admitting expert testimony. The Court should use its gatekeeping function to bar the jury from hearing this evidence, which could very well lead to a verdict that is inconsistent with the law. The Court should prevent the defense's expert from testifying as to these issues for the reasons described herein.

[This Space Intentionally Left Blank.]

## CONCLUSION

Wherefore, the United States respectfully requests that the Court enter an order limiting

excluding Mr. Vasquez's testimony about past ATF opinions and classifications as described above.

Respectfully submitted

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:_____
Arielle F. Klepach
Assistant United States Attorney
Court ID No. A5502706
99 NE 4th Ave, 6th Floor
Miami, Florida 33131
Tel: 305-961-9272
Arielle.Klepach@usdoj.gov

By:_____
Stephen J. Demanovich
Assistant United States Attorney
Florida Bar No. 61120
99 NE 4th Ave, 6th Floor
Miami, Florida 33131
Tel: 305-215-0262
Stephen.Demanovich@usdoj.gov