UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20083-WILLIAMS/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID SCHIEFERLE,

    Defendant.
_____/

# REPORT AND RECOMMENDATION ON
# DEFENDANT'S MOTION TO SUPPRESS

Defendant, David Schieferle, filed a Motion to Suppress evidence seized from his home pursuant to a search warrant this Court issued. (ECF No. 38). The government filed a response (ECF No. 43), Defendant filed a reply (ECF No. 45), and the Honorable Kathleen M. Williams referred the Motion to me for a report and recommendation. (ECF No. 40). On September 30, 2022, the Court heard oral argument on the Motion. (ECF No. 49). At the Court's direction, (ECF No. 50), the parties thereafter filed supplemental memoranda (ECF Nos. 54, 61). After carefully considering the parties' memoranda, the applicable law, the search warrant application, and counsel's argument, I recommend that the Court deny Defendant's Motion.

## I. The indictment

Defendant is charged by Indictment with two counts of Illegal Importation of a Firearm and Ammunition, on two different dates in December of 2020, in violation of 18 U.S.C. §§ 922(l) and 924(a)(1)(C), and one count of Possession of an Unregistered Firearm, again in December of 2020, in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2. All charges allege that the firearms at issue were silencers. (ECF No. 3).

## II. The search warrant

On December 17, 2020, a judge of this Court signed a search warrant that authorized the search of Defendant's Miami, Florida home (the "Warrant"). (ECF No. 38-1). The Warrant Application was submitted by a Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) ("the Agent"). The Agent asked for, and the Court granted, authorization for law enforcement to search Defendant's home[1] for instrumentalities, fruits, and evidence of violations of 18 U.S.C § 545 (smuggling goods into the United States) and 26 U.S.C. §§ 5844, 5861(k) and 5871 (receipt or possession of unlawfully imported firearms). (Affidavit in Support of Application for Search Warrant (the "Affidavit"), ECF No. 38-1 at 4; Warrant, *id.* at 23).[2]

The Affidavit began with background information about the Department of Homeland Security's (HSI) ongoing investigation of the unlawful importation from China,

---

[1] On the same day that he signed his search warrant application – December 17, 2020 – the Agent used public records to confirm that Defendant owned the home. (ECF No. 38-1 at ¶ 16).

[2] Hereafter I cite to the Affidavit as "Aff. at ¶ __."

and sale in the United States, of firearm suppressors. (Aff. at ¶ 7).[3] Although he did not explicitly state this, from the context of his Affidavit, it is evident that the investigation of Defendant was part of this larger investigation.

The Affidavit correctly noted that "firearm" is defined to include "any firearm silencer or firearm muffler", which itself is defined as "any device for silencing, muffling, or diminishing the report of a portable firearm, *including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.*" (Aff. at ¶ 11); 18 U.S.C. §§ 921(a)(3), (25)[4] (emphasis added). Although the Affidavit did not make this connection, the Court notes that this definition of silencer is incorporated in Title 26, Chapter 53; the National Firearms Act (NFA). *See* 26 U.S.C. § 5845(a). This is significant, given the Affiant's claim that there was probable cause that evidence of a violation of the NFA, *i.e.*, 26 U.S.C. §§ 5844, 5861(k) and 5871, would be found at Defendant's home.

Regarding HSI's ongoing investigation, the Affiant stated that the focus was on suppressors sent from addresses in China known to law enforcement as "associated with suppressor shipments." (Aff. at ¶ 8). The suppressors are "not serialized [and did not have] markings of any kind. (*Id.*). Importantly, they needed to be modified before they could function as suppressors:

---

[3] The Agent noted that these devices can be described as silencers, suppressors, sound suppressors or moderators, and that he used the term "suppressor" in his Affidavit. (Aff. at ¶ 9).

[4] The Affidavit mistakenly cites 18 U.S.C. § 921(a)(24), which is an obvious typographical error.

3

> [They] are capped on one end and require a modification step to drill through the suppressor to allow the round to be projected through…. While the assembly of these suppressor[s] [are] incomplete, the features and characteristics of the parts are consistent with those of known firearm suppressors.

(*Id.* at ¶ 8).

Further, the Affidavit stated that unlawful shipments from China were "often packaged and labeled to mislead law enforcement" by using shipping labels such as "auto repair tools, fuel filters, adapters, solvent trap suppressors, flashlight tubes, solvent filters, and other misleading titles [designed] to avoid detection of their actual intended use." (*Id.* at ¶ 9). The Affidavit advised that these shipped-from-China suppressors varied in size but appeared "very similar in in design." (*Id.*).

In addition, these Chinese-shipped suppressors were "marketed on the Internet as items purportedly unrelated to firearms, such as 'solvent traps,' 'solvent trap accessories," or 'dry storage container,' among other names." (*Id.* at ¶ 12). Despite this, these advertisements "sometimes include an 'NFA Warning' or a legal disclaimer regarding the use or modification of these devices…. [This] … as well as customer comments and reviews, suggests that the sellers and buyers are aware of the nature and actual intended use of these items." (*Id.*).

Having set forth this background information about the ongoing investigation, the Agent then provided information about a series of shipments from China to Defendant at his home, consistent with the patten of shipments the government had identified. *See* (*id.* at ¶¶ 13, 14, 15).

Law enforcement inspected two of those shipments, that were sent via the United States Postal Service. The first inspection took place on December 1, 2020. That package contained ten suppressors in a package labeled "Solvent". (*Id.* at ¶ 13). The second package, inspected on December 14, 2020, had two suppressors, and was declared as "Adapter". (*Id.* at ¶ 14). Law enforcement also identified "at least eighteen (18) shipments from China" to Defendant "since May 2020 … including five (5) in or about November 2020." (*Id.* at ¶ 15). Two shipments (apparently of the eighteen, although this was not explicit), arrived in the United States on November 12 and 18, 2020, and were declared as "Adapters". (*Id.*). Law enforcement confirmed that one of those packages was delivered to Defendant's home in late November 2020 – just weeks before the search warrant application. (*Id.*).

The Affidavit further advised that in 2019, the Alcohol Tobacco and Firearms (ATF) Technology Criminal Branch examined a cylindrical device like those "identified in the shipments in this investigation" and concluded that it in fact met the definition of a suppressor. (*Id.* at ¶ 10). The Agent also advised that based on his "training and experience, I believe the combination of parts contained in the packages that are the subject of this investigation [of Defendant] … were designed and intended for use in assembling or fabricating a firearms silencer …." (*Id.* at ¶ 11).

The Affiant also advised that Defendant was at that time employed as a Federal Air Marshal. He added: "I also confirmed that [Defendant] has no known outside employment requests…. [and] there was nothing in [Defendant's] employment file that suggested that

5

the suppressors at issue here are at all connected to his employment as a Federal Air Marshal." (*Id.* at ¶ 18).

Finally, the "Probable Cause" section of the affidavit provided information about legal requirements for the lawful importation of firearms, which as noted, includes suppressors. First, ATF confirmed that Defendant "did not have a Federal Firearms License or National Firearms Act/tax stamps, which are necessary to legally *import* suppressors." (*Id.* at ¶ 17) (emphasis added). Next, the Affidavit advised that Defendant "did not file the appropriate forms or obtain approval from ATF that would allow him to legally *receive* the suppressor shipments in this case." (*Id.* at ¶ 19) (emphasis added). The Affidavit then added this about the legal requirements to *make* a firearm:

> Under the National Firearms Act, ATF must provide advanced approval before a silencer is made. Unlicensed persons must file an ATF form 1, application to make a firearm, pay a $200 making tax, and comply with all other provisions of the law prior to making the suppressor. Approval of the ATF form 1 results in registration of the suppressor to the maker. ATF must approve in advance any subsequent transfers of the registered suppressors.

(*Id.* at ¶ 19). Notably the Affidavit did not allege that Defendant's criminal conduct involved unlawful making of suppressors. It also did not state whether Defendant had satisfied these legal requirements to make suppressors.

Last, the Affiant wrote: "[D]efense articles cannot be imported into the U.S. from China because of section 447.52(a) of the Arms Export Control Act." (*Id.*).[5]

---

[5] That regulation reads in part: "It is the policy of the United States to deny licenses and other approvals with respect to defense articles and defense services originating in … China." 27 C.F.R. § 447.52(a). 27 C.C.R. § 447.11 defines "defense articles" to include silencers – by reference to § 447.21 – and to include those articles "in a partially completed state ... which have reached a stage in manufacture where they are clearly identifiable as defense articles" – by reference to

6

The Affidavit provided no further explanation how its allegations establish probable cause that evidence of 18 U.S.C. § 545 ("[s]muggling") and 26 U.S.C. §§ 5844, 5861(k) and 5871 ("[r]eceipt or possession of an unlawfully imported firearm") would be found at Defendant's home. (ECF No. 38-1 at 4).

In his Motion, Defendant argues that the search warrant application did not provide probable cause that he committed the two alleged crimes, and that evidence of those crimes would be found in his home. I turn next to the legal standard that governs this Court's evaluation of Defendant's Motion.

### III. Legal standard for review of probable cause in a search warrant application

The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence of that crime will be found at the place the government asks to search. *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir.1984) (citing *Zurcher v. Standford Daily News*, 436 U.S. 547, 558 (1978)).

Probable cause is not a high standard of proof. The Supreme Court has stated that it "deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 241 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also United States v. Miller*, 24 F.3d 1357, 1361

---

§ 447.22. The Affidavit did not provide any more information about the enforcement of this "policy."

(11th Cir. 1994). The standard recognizes that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Gates*, 462 U.S. at 235 (citation and quotation marks omitted).

This Court's review of the issuing judge's finding of probable cause is deferential. First, it is confined to the face of the search warrant application. *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.") (citation omitted); *see also United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). Second, it "should not take the form of *de novo* review." *Gates*, 462 U.S. at 236. Rather, reviewing courts must pay "great deference" to the issuing judge's determination of probable cause. *Id.* (quoting *Spinelli v. United States,* 393 U.S. 410, 419 (1969)).

> The task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place. And the duty of the reviewing court is simply to ensure that the magistrate [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (alterations in original)); *see also United States v. Brundidge*, 170 F.3d 1350, 1352-53 (11th Cir. 1999); *United States v. Magluta*, 198 F.3d 1265, 1271 (11th Cir. 1999), *vacated on other grounds*, 203 F.3d 1304 (11th Cir. 2000). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quotation marks omitted).

**IV.     The two crimes identified in the search warrant**

The Search Warrant Application averred that there was probable cause that evidence of two crimes would be found at Defendant's home. The first, "[s]muggling goods into the United States", (ECF No. 38-1 at 4) is, in a nutshell, the knowing importation of any merchandise into the United States contrary to law, in violation of 18 U.S.C. § 545.

The second crime identified in the Application was "[r]eceipt or possession of an unlawfully imported firearm", in violation of 26 U.S.C. §§ 5844, 5861(k) and 5871, (*id.*); provisions of the NFA. Section 5861(k) makes it unlawful for any person "to receive or possess a firearm which has been imported or brought into the United States in violation of section 5844". 26 U.S.C. § 5861(k).

> Section 5844 provides:
>
> No firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes, under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is –
>
> > (1)     being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or any political subdivision thereof; or
> >
> > (2)     being imported or brought in for scientific or research purposes; or
> >
> > (3)     being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer;
>
> except that, the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with classifying the firearm.

The final section cited in the search warrant application, 26 U.S.C. § 5871, establishes that a violation of these provisions is a felony punishable by no more than ten years in prison.

V. Analysis

    a. **Probable cause**

Defendant's challenge to probable cause relies on: (1) the intent element of the definition of a suppressor, and (2) the fact that the product shipped from China to Defendant would have to have a hole drilled in it before it could function as a firearm suppressor. Regarding intent, as noted, the NFA defines a silencer as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and *intended* for use in assembling or fabricating a firearm silencer or firearm muffler, and any part *intended* only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(25) (emphasis added); *see also* 26 U.S.C. § 5845(a) (adopting definition of a silencer set forth in 18 U.S.C. § 921).

In his Motion,[6] Defendant argued that the products shipped to him from China were "oil filters or inline filters" used in farm equipment, and at the hearing he argued that they were "solvent traps" which have the legitimate use to collect oil and solvents when a firearm is cleaned. Defendant further argued that these could only become a "suppressor" if Defendant intended to modify them for use as a suppressor, and that the Warrant Application failed to provide probable cause that Defendant had that intent.

---

[6] (ECF No. 38 at 2).

Defendant is correct that the Warrant Application does not expressly identify facts to support a finding that Defendant intended to drill a hole through the capped end of the suppressors, so that they could function as such.[7] The Application, however, did not need to present evidence that *Defendant* intended to drill a hole in the products being shipped to his home; it needed to demonstrate probable cause that the products were being imported with the intent that *someone* would take that step so that they could function as a suppressor, and that evidence of the suspected crime would be found at Defendant's home.

In his argument, Defendant asks too much of the probable cause standard. To issue a search warrant, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her] … there is a fair probability that contraband or evidence of a crime will be found at", in this case, Defendant's home. *Gates*, 462 U.S. at 238. The Judge here knew from the Affidavit that in the six months before she issued the Warrant, approximately twenty packages had been shipped to Defendant's home from Chinese vendors known to law enforcement to sell parts commonly modified to function as suppressors. Law enforcement inspected two of those packages and found multiple suppressors in each. (Aff. at ¶¶ 13, 14). It confirmed that one of the packages was delivered to Defendant's home just a couple weeks before the Warrant was issued. (*Id.* at ¶ 15). Those shipments were labeled like other shipments the government had identified as containing suppressors. Further, the Court could reasonably rely upon the Agent's

---

[7] As noted, the Affidavit acknowledged that "[t]he suppressors are capped on one end and require a modification step to drill through the suppressor to allow the round to be projected through." (Aff. at ¶ 8).

assessment, based on his training and experience, that the items that were repeatedly shipped to Defendant's home were "designed and intended for use in assembling or fabricating a firearms silencer." (Aff. at ¶ 11).

The Court also knew that Defendant was employed in a law enforcement capacity as a Federal Air Marshal. When the Court made its "practical, common-sense decision" about probable cause, *Gates*, 462 U.S. at 238, it could reasonably infer that Defendant had an interest in firearms, was trained and knowledgeable about them, and understood that their possession and use are highly regulated. Further, the Court knew that Defendant's receipt of apparent suppressors was not required by his employment. Taken together, I conclude that there was a "substantial basis", *id.*, for the issuing judge to conclude that there was probable cause that the many devices shipped to Defendant's home were "intended for use in assembling or fabricating a firearm silencer". 18 U.S.C. § 921(a)(25).

Defendant's challenge to probable cause does not end there. His Motion[8] also challenges the Application's confusing reference to ATF Form 1; an Application to Make and Register a Firearm.[9] The Agent wrote:

> Under the National Firearms Act, ATF must provide advanced approval before a silencer is *made*. Unlicensed persons must file an ATF form 1, application to *make* a firearm, pay a $200 making tax, and comply with all other provisions of the law prior to *making* the suppressor. Approval of the ATF form 1 results in registration of the suppressor to *the maker*.

---

[8] *See* (ECF No. 38 at 8-9).

[9] *See Form 1 – Application to Make and Register a Firearm (ATF Form 5320.1)*, Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/firearms/docs/form/form-1-application-make-and-register-firearm-atf-form-53201/download (last revised September 2019).

(Aff. at ¶ 19) (emphasis added). The Agent did not state whether Defendant had satisfied these requirements to make a suppressor.

This statement about the requirements to make a suppressor appear to be a non sequitur, given that the Application does not allege that there was probable cause that Defendant committed the crime of unlawfully making suppressors, or that evidence of such a crime would be found at Defendant's home. At oral argument, the government admitted that the reference to ATF Form 1 was an error, and that a different form – ATF Form 6 – should be completed and approved prior to importing a firearm. The Application, however, said nothing about this requirement.

Rather, the Application alleged that there was probable cause that Defendant smuggled goods into the United States in violation of 18 U.S.C § 545,[10] and received or possessed an unlawfully imported firearm, in violation of 26 U.S.C. §§ 5844, 5861(k) and 5871. (ECF No. 38-1 at 4; Aff. at ¶ 3 and Attachment B).

The analysis of any level of proof of a crime – from the low standard of probable cause, to the highest, proof beyond a reasonable doubt – requires review of the elements of the crime. From the language of the statute itself it appears that the Title 26 offense alleged in the Application requires proof that someone received or possessed a silencer that was imported into the United States, in violation of section 5844. 26 U.S.C. § 5861(k). Section 5844, in turn, requires proof that the importer (Defendant here) shows, pursuant to

---

[10] The Application never identified the law that was the object of the 18 U.S.C. § 545 smuggling charge. The only possible target offense offence referenced in the Application was the alleged violation of Title 26.

13

"regulations as may be prescribed by the Secretary" that the firearm (here, suppressors) will either be used by the United States, or for scientific or research purposes, or for testing by a registered manufacturer. 26 U.S.C. § 5844. The Application does not identify any regulations "prescribed by the Secretary" pursuant to § 5844, and it does not state whether Defendant met these requirements.

The Affidavit does state that ATF advised that Defendant "does not have a Federal Firearms License or National Firearms Act/tax stamps, which are necessary to legally import suppressors." (Aff. at ¶ 17). Later, the Agent writes: "Furthermore, our investigation revealed that [Defendant] did not file the appropriate forms or obtain approval from ATF that would allow him to legally receive the suppressor shipments in this case." (*Id.* at ¶ 19). While these conclusory statements are consistent with a finding of probable cause, they do fall short. The Agent does not identify "the appropriate forms" or means of ATF "approval" required before Defendant could receive the shipments. The Application never expressly ties the evidence alleged therein to the elements of the two crimes that are the basis of the Application and Warrant, which is what would allow for a clear assessment of probable cause.

I lean heavily on this guidance from the *Gates* Court to resolve the Motion: "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quotation marks and citation omitted). Applying this standard of "great deference", *id.* at 236, I conclude that the issuing judge had a "substantial basis"

to conclude that the warrant was supported by probable cause, *id.* at 239, and that the Motion should therefore be denied.

### b. Good Faith exception

If my conclusion is incorrect, and probable cause does not support the warrant, Defendant's Motion should nonetheless be denied, because the good faith exception to the exclusionary rule applies.

The key inquiry when determining whether a Fourth Amendment violation warrants exclusion is the "efficacy of ... deterring Fourth Amendment violations in the future." *Herring v. United States*, 555 U.S. 135, 141 (2009) (citations omitted). When officers act on a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if police act "in objectively reasonable reliance" on the subsequently invalidated search warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). This "good faith exception" to the exclusionary rule rests on the principle that excluding evidence based on the conduct of an officer who has acted in an objectively reasonable way will have no effect on deterring future unlawful or unreasonable conduct. *Id.* at 919-20. The Supreme Court explained:

> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the

>officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 920-21 (quotations, citations, and footnotes omitted).

The burden is on the government to establish that the good faith exception applies. *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) (citation omitted). To do this, the government may rely on the facts stated within the affidavit; it need not present extrinsic evidence. *Id.* "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, ... for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (alteration adopted) (quotations and citations omitted).

The good faith exception, however, does not apply in four circumstances: "(1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quotations omitted) (citing *Leon*, 468 U.S. at 923).

The only exception Defendant invokes is the first. (ECF No. 45 at 4-7). It is governed by the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978).

In *Franks v. Delaware*, the Supreme Court announced a rule of "limited scope" under the Fourth Amendment, *id.* at 167, that permits a defendant to challenge the truthfulness of statements made in search warrant applications when the defendant makes a "substantial preliminary showing" that: (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. *Id.* at 155-56. If the defendant satisfies these two requirements, he is entitled to an evidentiary hearing on the issue; what is known as a *Franks* hearing. If this Court were to hold a *Franks* hearing and conclude that Defendant established the allegation of perjury or reckless disregard, and, after it sets aside the false material, that the affidavit's remaining content is insufficient to establish probable cause, then the good faith exception would not excuse the absence of probable cause. *Id.* at 156.

It is not easy for a defendant to make a *Franks* showing. Regarding the first step, a defendant's claim of false statements or material omissions must be more than conclusory. Here, Defendant would have to identify specific portions of the Affidavit he claims are false, or were made with reckless disregard for the truth, and support this with sworn or otherwise reliable statements of witnesses, or satisfactorily explain their absence. *Id.* at 171; *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006). "Allegations of negligence or innocent mistake are insufficient" to trigger the right to an evidentiary hearing. *Franks*, 438 U.S. at 170. Similarly, "insignificant and immaterial

misrepresentations or omissions will not invalidate a warrant." *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995) (alteration adopted) (quotation marks and citations omitted).

Defendant plainly did not meet this burden to establish this first step. He simply referenced *Franks* in his Motion with the conclusory statements that "[t]he magistrate judge was misled that solvent traps are plainly illegal", (ECF No. 45 at 5), and the agent failed "to fully explain technical legalities regarding solvent traps and a target's knowledge and purpose." (*Id.* at 6). Moreover, Defendant made no showing to support the second step, to show that the challenged statement or omission was essential to the finding of probable cause. *Franks*, 438 U.S. at 156.

None of the other circumstances that invalidate the good faith exception apply. The Judge who signed the warrant did not "wholly abandon[] [her] judicial role" in the manner condemned in *Lo-Ji Sales, Inc.*, 442 U.S. 319. *Leon*, 468 U.S. at 923.[11] And, plainly, for the reasons set forth in section V(a) above, the affidavit supporting the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). Last, Defendant does not claim that the warrant failed to

---

[11] In *Lo-Ji Sales, Inc.*, a Town Justice approved an open-ended warrant, based on conclusory allegations, that authorized a search of a bookstore for "similar" items determined to be in violation of New York's obscenity laws. 442 U.S. at 321-22. The warrant did not list those items. Rather, the Town Justice accompanied the officers in the search, examined materials and authorized their seizure. *Id.* at 326-27. The Town Justice "was not acting as a judicial officer but as an adjunct law enforcement officer." *Id.* at 327. Defendant makes no claim, nor could he, that the Judge who authorized the Warrant abandoned her judicial role.

meet the particularity requirement of the Fourth Amendment, and thus the final exception to the good faith exception is inapplicable.

On this record, I conclude that law enforcement officers acted "in objectively reasonable reliance" on the search warrant, *Leon*, 468 U.S. at 922, and thus the good faith exception to the exclusionary rule applies here and serves as an independent basis to deny the Motion.

**VI. Recommendation and Objections**

For the foregoing reasons, I RESPECTFULLY RECOMMEND that the Court **DENY** Defendant's Motion to Suppress. (ECF No. 38).

**No later than November 9, 2022,** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b), 11th Cir. R. 3-1 (2016).

DONE AND RECOMMENDED in Miami, Florida this 3rd day of November 2022.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE