UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-CR-20083-KMW

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **DEFENDANT'S RULE 29 POST-VERDICT MOTION FOR JUDGMENT OF ACQUITTAL, alternatively MOTION FOR NEW TRIAL** |
| v. | |
| **DAVID SCHIEFERLE,** | |
| Defendant. | |
| _____/ | |

Defendant DAVID SCHIEFERLE, through counsel, moves this Honorable Court, pursuant to Fed. R. Crim. P. 29(c), for Judgment of Acquittal as to all counts. In the alternative, Schieferle moves this Court to grant a new trial under Fed. R. Crim. P. Rule 33.

## BACKGROUND

Defendant was charged by Indictment with two counts of Illegal Importation of a Firearm and Ammunition, on December 1 and 14, 2020, in violation of 18 U.S.C. §§ 922(l) and 924(a)(1)(C), and one count of Possession of an Unregistered Firearm, on December 18, 2020, in violation of 26 U.S.C. § 5861(d). All charges allege that the firearms at issue were silencers. ECF No. [3].[1]

Specifically, counts one and two of the indictment charged:

> knowingly and without authorization by the Attorney General as provided in 18 U.S.C. j 925(d), imported and brought into the United States, a firearm that is, a silencer; in violation of Title 18, United States Code, Sections 922(1) and 924(a)(1)(C).

---

[1] Title 18 U.S.C. § 921(25) - the terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned**,** and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

Count three of the indictment charged:

> did knowingly possess a firearm, as that term is defined in Title 26, United States Code, Section 5845(a), which firearm was not registered to the defendant in the National Firearms Registration and Transfer Record as required by Title 26, United States Code, Section 5841 in violation of Title 26, United States Code, Section 5861(d) and Title 18, United States Code, Section 2.
>
> It is further alleged that the firearm is a silencer as defined in Title 18, United States Code, Section 921.

Defendant presented evidence of that the he did not have knowledge or the intent to import or possess a silencer. In fact, Defendant's only action was to write his intended purpose on the unopened box – "solvent tube," which he received from New Jersey. (Exhibit 9B). The government could not negate Defendant's theory because solvent traps are legal and it presented no evidence the items ordered or possessed could not be used as a solvent trap or inline filter. But more importantly, it was not used or close to being used at all as a silencer.[2]

## **LEGAL STANDARD**

Rule 29(a) in part states:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

*United States v. Thomas*, 987 F.2d 697, 701 (11th Cir. 1993).

---

[2] The government and defense presented defense experts on firearms and silencers. The Court precluded use of any ATF memoranda guiding the opinions of those experts. The importance of the internal memos from ATF is that it has recognized and classified devices like the ones presented to the jury as solvent traps that are legal. ECF No. [36-1] (Some devices called "solvent traps" may have a legitimate purpose as a firearm accessory); ("Certain commercially available items such as cleaning solvent traps, automotive oil/fuel filters, flashlights, and freeze plugs are sometimes used to assemble firearm silencers. Such items are unregulated *until* a possessor assembles, accumulates, or otherwise demonstrates these articles are to be used for making a firearm silencer") (emphasis added).

Rule 29(c) permits a defendant to renew his motion for judgment of acquittal post-verdict.

> In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. *See United States v. Sellers,* 871 F.2d 1019, 1020 (11th Cir.1989). The district court must view the evidence in the light most favorable to the government. *See id.* (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S. Ct. 457, 86 L.Ed. 680 (1942), *superceded by rule on other grounds, Bourjaily v. United States,* 483 U.S. 171, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987)). The court must resolve any conflicts in the evidence in favor of the government, *see United States v. Taylor,* 972 F.2d 1247, 1250 (11th Cir.1992), and must accept all reasonable inferences that tend to support the government's case. *See United States v. Burns,* 597 F.2d 939, 941 (5th Cir.1979). The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See Sellers,* 871 F.2d at 1021 (citing *United States v. O'Keefe,* 825 F.2d 314, 319 (11th Cir.1987)). "'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' " *Sellers,* 871 F.2d at 1021 (quoting *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc* ), *aff'd on other grounds,* 462 U.S. 356, 103 S. Ct. 2398, 76 L.Ed.2d 638 (1983)). A jury is free to choose among reasonable constructions of the evidence. *See Sellers,* 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." *See id. (citing United States v. Sanchez,* 722 F.2d 1501, 1505 (11th Cir.1984)).

*United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999).

In sum, the government's evidence, including reasonable inferences, must be sufficient to exclude theories of innocence so that a factfinder may determine beyond any reasonable doubt that only the government's theory of guilt is correct. *See United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992) ("where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the verdict, a reasonable [factfinder] must necessarily entertain a reasonable doubt") (internal quotations and citations omitted; emphasis in original). " . . . [I]if the evidence viewed in the light most

favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982).

Federal Rule of Criminal Procedure 33 permits a new trial based upon the "interest of justice" and grounded on any reason other than newly discovered evidence. If the Court grants a judgment of acquittal it should also alternatively grant a motion for new trial. *See* Fed. R. Crim. P. 29(d)(1).

### The Devices were not Intended to be Used as Firearm Mufflers or Silencers

There were two types of devices. *First,* the ones that required modification through drilling of the end caps and cups. *See* Exhibits 1A-1H. The *second*, ones with the mono-core, the government argued required no modification; but could also be used for other purposes, such as their designed and advertised inline fuel filters. *See* Exhibits 1I and 1J. The first exhibits, the government expert admitted, required modification and they be attached to a firearm before it could be considered a firearm silencer. As a matter of law and a matter of context in this case, the government could not rule out whether the devices be used for something other than a silencer. Two answers were provided at trial by both firearms experts: solvent trap; and, inline filter.

In order to solve the confusion about what the law permits the Court in *Crooker* announced: "[G]iven the statute's wording, the answer is not to stretch the present statute beyond its language but to amend it-if the government is so minded-to deal more effectively with home-made or adaptable devices." *United States v. Crooker*, 608 F.3d 94, 100 (1st Cir. 2010). Crooker was charged with transporting a silencer as a convicted felon. *Id.* at 95. Crooker was emailing a person about a list of suspicious chemicals and how he packaged them to avoid regulations. *Id.*

Investigators inspected a package based upon the email. *Id.* "The package proved to contain a large caliber airgun and a cylinder made of black metal with a hole running through it, threading that allowed attachment to the muzzle of the airgun and baffles inside." *Id.* The contents of the package were not generally ordered, it was made specifically for Crooker by another person. *Id.*

The government offered evidence of Crooker's knowledge of firearms and technical skill including an article referring to the "possibility of adaptation of the airgun silencer for use on a powder bearing firearm." *Id.* at 96. The government's expert testified that the seized device could be used as a firearm muffler. *Id.* The item seized was tested and worked as a firearm silencer. *Id.* "There was other evidence of Crooker's interest in silencers and their lawfulness, but nothing alters the thrust of the government's case." *Id.* Regardless, the trial court instructed the jury on evidence of *intent* as a matter of proving *knowledge*. *Id.* However, it did instruct the jury that the government need not prove Crooker "or anyone else" actually used the device as a firearm silencer or ever intended it to be used as a firearm silencer. *Id.*

The same problem arises in this case. The devices were not near or attached to a firearm and could be used with an airgun that Schieferle possessed. *See id.* at 97. Some modification (drilling) or adaptation was required for at least Exhibits 1A-1H in order to definitively prove capability, knowledge, and intent to use for a firearm. In addition to use with an airgun, it could be used as solvent trap or inline filter, regardless of discounted efficacy by the government's expert. The government failed to prove knowledge, purpose, or both with respect to these devices. Count three must therefore be dismissed since Exhibit 9 is the same as Exhibits 1A-1H. Furthermore, Counts one and two also must be dismissed because only two had a "mono-core," which ostensibly did not require any modification, even though it could be used for an airgun, fuel or oil filter, or solvent trap.

There is a problem defining *capable* when devices, as the government suggested in opening statement, like a coke bottle, could be used as a solvent trap -- but also a silencer, if a bullet were shot through them. *See id.* "The peculiar problem of silencers is that many objects, including relatively innocent ones, have some capacity to muffle the sound of a shot." *Id.* The argument that a stone could be used as a hammer is not sufficient to prove intended use as a hammer, unless there was evidence the stone was used as a hammer. *Id.* But the Court cannot view the devices alone without intent. The statute is not written like the machine gun statute, which requires only knowledge of the gun's "capability to operate automatically rather than any purpose for the gun to be used as an automatic weapon." *Id.* at 98 (citing *Staples v. United States,* 511 U.S. 600, 619 (1994)). The machine gun statute adopts an objective test of capability. *Id.* "Something is or is not an automatic weapon." *Id.* But the range of objects that can muffle a firearm is so large some "filtering restriction is needed to prevent overbreadth and possibly vagueness." *Id.* The Court in *Crooker* concluded that "the statute by its terms requires something more than a potential adaptation and knowledge of it." *Id.* The statute speaks "for" silencing or muffling. *Id.* at 97. The government was therefore required to prove criminal intent. *Id.* The *Crooker* Court is not alone in its interpretation the law requires proof of intent or purpose. *Id.* & n.3 (citing to other circuits). *See also United States v. Coffell,* 720 F. App'x 521, 527 (11th Cir. 2017) (government needs to prove defendant was "aware of the features that bring the weapon within the scope of the Act: the fact that it is a silencer") (citation omitted).

In *United States v. Klebig,* the Court noted that Klebig collected a lot of "stuff" in his home. 600 F.3d 700, 703 (7th Cir. 2009). He also held "almost two dozen firearms of various types." *Id.* Unlike Schieferle, his guns were everywhere in his home. *See id.* "The silencer consisted of an oil *filter taped to the end of the barrel* of a different rifle." *Id.* (emphasis added).

"The main issue at trial was whether Klebig knew that the firearm under his bed possessed the characteristics that required it to be registered as a rifle and whether he intended to use the oil filter as a silencer." *Id.* "Klebig argued that he did not intend to use the oil filter as a silencer but rather as a flash suppressor, a use that does not require registration." *Id.* at 704 & 711. To use the filter as a flash suppressor, Kleibig intended to shoot a bullet through the oil filter. His purpose was to suppress a legal characteristic – flash, rather than sound. *See id.* But the effect is the filter can do both. Because of evidentiary errors associated with the trial, the Court in *Klebig* reversed for a new trial. *Id.* The Seventh Circuit required the government to prove "intent to use the filter as a silencer. . . ," an item found attached to a firearm that could act as silencer, and even with the government's expert opining that the oil filter functioned as a silencer. *Id.* 707-08 & 722. Items used as an oil filter could be converted into a firearm, but *could*, based upon the case law is not enough. *See United States v. Salas*, 2017 WL 3207804, n. 4 (D. New Mex. 2017) (". . . [T]he government explained that the other suspected silencer that was ultimately ruled out was an oil filter that had been modified, but could also have been a solvent trap used for cleaning firearms. A firearms technology testing lab concluded the oil filter was not intended for use as a silencer because it did not have a hole drilled out of the end").

In opening statement, the government stated it must prove the defendant's intent to use the items as silencers. As noted above, because Schieferle did not ever see or touch the online ordered items which were described as "Aluminum 1/2-28 or 5/8-24 Car Fuel Filter 1X7 or 1X13 Car solvent trap or NAPA 4003 WIX 24003" fuel filters. The items' desriptions do not mean he intended to use them as silencers. No rational juror could conclude that the government has shown beyond every reasonable doubt that the devices were intended "for silencing, muffling or diminishing the report of a portable firearm." The items in question were various sizes for

7

solvent filtering for farm equipment, and cleaning a firearm; and permitted by ATF for cleaning firearms. *See* ECF No. [36-1]. With minor modification, they could be used for a filtering debris and water from solvents such as gasoline or diesel fuels as an inline fuel filter. Setting aside the argument that Schieferle did not intend or search a ready to go silencer, the devices that required modification were not "intended only for use" or "intended for use in assembling or fabricating a firearm silencer or firearm muffler." Again, it is important to recognize that even ATF recognizes the other uses. *See* ECF No. [36-1].

Lastly, the item found in his home was not opened. There is no evidence that Schieferle had seen what was inside the box. The agents did not endeavor to preserve the evidence, including test for fingerprints or DNA, to show whether Schieferle had opened the box or if one of the agents opened the box. There were no tools or firearms next to the box on the dining room table. The government argued that there were better ways to clean a gun and capture solvent, but the evidence presented demonstrated solvent traps are a real solvent trapping and gun cleaning tool. Because the Government has failed to establish that the solvent traps were designed for the purpose of silencing, muffling, or diminishing the report of a firearm, it follows logically that the government has not shown Mr. Schieferle had the purpose to use them as a silencer.[3]

None of the devices in Schieferle's trial were found near a firearm or tools meant to adapt the devices into a silencer. *See* Exhibit 6H. Yet, the government spent an inordinate amount of time demonstrating Schieferle collected guns and airguns. Presentation of thumbnails from the computer are unreliable, as discussed below, because the government "cherry picked" lawful data that was merely cached, not searched; not highlighting thousands of books that were

---

[3] The Supreme Court's recent ruling in *Ruan v. United States*, requires the government to establish that Schieferle had knowledge that he was in violation of the law. *Ruan v. United States*, 142 S. Ct. 23 70, 2377 (2022) (explaining that statutes that "contain no mens rea provision" should be read to require "that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'")

downloaded, but presenting one YouTube video that was not proven as searched for or viewed by Schierferle about silencers.

Ultimately, this is why context is everything in this case. "Solvent tube" on the side of an unopened box, is the only expression of intent. Because the government was unable to prove any other crime related to use of a firearm or that any devices were attached to any firearm with the intent to diminish the report -- the case was always impossible to prove criminal intent.

### The Cell Phone Extraction Evidence Should Have been Excluded

The government highlighted a flawed timeline because the computer data extraction was faulty. The government could not prove when the cached data was searched or viewed by Schieferle because he no longer had the computer data after the execution of the search warrant on December 18, 2022. The government "cherry picked" portions of a downloaded book and one YouTube video that could not be proven Schieferle watched, let alone searched for since there is an "autoplay" function on the application.

The government argued in closing that Schieferle did not search on the terms "oil filter" or "adapter" but he did. *See* Exhibit 22, (CFA Williams p. 4).[4] CFA Williams' testimony was candid. He testified that he did not plug in the selected terms to search. He also could not testify that someone typed in the terms and searched for anything. Only that certain webpages were cached on Schieferle's computer. Regardless, the terms "solvent trap," "oil filter," and "adapter" were on Schieferle's computer. *Id.* This was an argument that the jury should have been able to consider when deliberating about Schieferele's intent. He did not search for "silencer." He was intending to use these devices for lawful purposes.

---

[4] The government objected when defense counsel placed the search report on the Court's Elmo on the ground it was not in evidence, but what is labeled as "Government's Exhibit 22" includes page 4 search terms.

The biggest issue is with the timeline that the government attempted to create with the Schieferle's cell phone. The defense objected to its admission because the Cellebrite report indicates that items were created, modified, and accessed post-seizure. Schieferle could not have searched, downloaded, or even glanced at any cached[5] items after government agents took his cell phone from him. CFA Williams admitted he did not know what the middle column of the Cellebrite report indicated. His testimony acknowledged that cached items and "artifacts" are a "gray area" and can be incorrect. A witness may be considered an expert but still offer unreliable testimony. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003). Williams' testimony was so unreliable the cell phone data should not have been admitted. District courts should perform the "gatekeeping" function concerning admissibility of expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). This function requires the trial court to conduct an exacting analysis of the foundations of the expert's opinions to ensure they meet the standards of admissibility under Rule 702. *Id.*

This is not a matter of evidentiary weight; it is a matter of admissibility. The purpose of the Cellebrite software is to organize data so it can be reviewed. *United States v. Smith,* 2022 WL 17741100, at *6 (S.D. Ill. Dec. 16, 2022). But it could not be reviewed in any meaningful way, and certainly not as data that could create an accurate timeline with the imprimatur of an expert opinion. It left a false impression. And, the government speculated that the cached data was evidence that Schieferle searched for these items, considered them, and acted on what he must have seen. Because the Court should have excluded the Cellebrite cell phone data, the Court should grant an acquittal because the evidence about what

---

[5] A fast storage buffer in the central processing unit of a computer.

Schieferle ordered online would not be admitted. This is particularly true for Exhibit 1I. (fuel filter).

All other evidence assumes that Schieferle viewed, comprehended, and made decisions to choose to use the items that did not arrive as silencers. There was no evidence presented that he took any steps to use these items as silencers. In fact, the testimony from Agent Vilches was that there was no evidence that any of the guns in Schieferle's home were ever fired. Lastly, some of the guns were air-guns; and, the government's expert, as well as the defense's expert, opined that the devices could be used on an airgun as a silencer. The government did not establish which guns in Schieferle's home were air-guns.

## **CONCLUSION**

The Court should grant Defendant's motion for judgment of acquittal. Alternatively, the Court should grant Defendant a new trial.

Respectfully submitted,

BUSCHEL GIBBONS, P.A.
501 E. Las Olas Blvd., Third Floor
Tel: (954) 530-5748 (direct)
Email: Buschel@BGlaw-pa.com

By: __/s/ Robert C. Buschel_____
     ROBERT C. BUSCHEL
     Florida Bar No. 0063436

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2022, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

BUSCHEL GIBBONS, P.A.

BY: /s/ Robert Buschel
ROBERT C. BUSCHEL